**E. BURNHAM, INC.,**
v.
**The UNITED STATES.**
No. 236–53.

United States Court of Claims.
Nov. 8, 1955.

John J. Devery, Chicago, Ill., for plaintiff. Michael F. Mulcahy, Chicago, Ill., was on the brief.

David Orlikoff, Washington, D. C., with whom was Asst. Atty. Gen., Warren E. Burger, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

Plaintiff operates a beauty salon and a school of beauty culture. Prior to the enactment of the Servicemen's Readjustment Act of 1944 all of plaintiff's students were women, but after the enactment of that act a large number of men enrolled in the school. A part of the course of instruction was actual work done on customers. During the period in question the school, alleging that it did not have sufficient customers to give the trainees the required practical training, represented to the Veterans' Administration that it would be necessary for it to employ models for this purpose, which, it says, the Veterans' Administration agreed to. It claims it did employ models and it sues for the fees allegedly paid them.

Defendant has filed a counter-claim alleging that the vouchers submitted by the plaintiff for these model fees were fraudulent, and it asks judgment against plaintiff in the sum of $2,000 for each of the four false claims submitted and, in addition, for double the amount of damages which it alleges the United States has sustained by reason of the presentation of the fraudulent claims.

The male veterans enrolled in plaintiff's school were partly disabled veterans, who were enrolled under Public Law 16, being the Act of March 24, 1943, 57 Stat. 43, and partly able-bodied veterans, who were enrolled under Public Law 346, which is the Servicemen's Readjustment Act of 1944, 58 Stat. 284, 287. Public Law 16 authorized the Veterans' Administration to enter into contracts with schools for the instruction of disabled veterans. These contracts were required to be in writing. Public Law 346 also authorized the Veterans' Administration to enter into contracts with schools for the instruction of veterans who were not disabled, but these contracts were not required to be in writing. The great majority of the veterans enrolled in plaintiff's school were enrolled under Public Law 346.

The regulations of the Veterans' Administration, section 36.207 (10 F.R. 2618; 38 C.F.R. 1945 Supp.), provided for the payment to the school for the instruction of veterans of the same tuition and fees, and for the same books, supplies and equipment "as are generally required for the successful pursuit and completion of the course by other students in the institution." Subparagraph (a) (1) of this section, under the heading of "Charges for tuition, laboratory, library, health, infirmary and other similar fees," stated that the Administrator had determined that the following charges were fair and reasonable:

"The charges for tuition, laboratory, library, health, infirmary and other similar fees customarily made and in effect prior to June 22, 1944, or as may be established after said date *if applicable to all classes of students at the approved institution* * * * Provided, That the proper official certifies to the manager of the regional office the charges *customarily made to any*

*student pursuing the particular course."* [Italics ours.]

A similar provision is incorporated in subparagraph (2), that is to say, a provision that the charges to veterans shall be the same as the charges to other students.

Under subparagraph (b) of the section, provision is made for the payment of charges for books, supplies, equipment and other necessary expenses, but before payment, it is required that the institution shall certify to the manager "the actual cost of such books, supplies, equipment and other expenses."

The Commissioner's report shows that the officials of the school contacted the Veterans' Administration seeking authority to pay models to be used in the instruction of the students at the rate of fifty cents an hour, and the Veterans' Administration agreed to such an amendment of its contract with the school for the instruction of disabled veterans, but it agreed to pay "only for the actual amount of model fees incurred."

No agreement was made for the payment of model fees by veterans enrolled under Public Law 346, but plaintiff says that it understood that the rule applicable to students enrolled under Public Law 16 would also be applicable to students enrolled under Public Law 346. This was a logical assumption.

■ However, the Commissioner's findings of fact show that no models were ever paid anything and his report is fully supported by the evidence.

What the school did was to charge its customers a smaller amount, if the work done for them was done by students, than when it was done by trained employees. Naturally the charges made for services performed by students would be less than the charges made by trained employees. The fact that they were less is by no means proof of the fact that the customers were paid anything for permitting the students to work on them. Instead of the school paying them anything, they paid the school for the services of the students. The fees received by the school from customers for work done by students were quite a substantial part of the income of the school. Its income from such sources was as follows:

| | |
|---|---|
| 1945 | $15,106.31 |
| 1946 | 19,847.75 |
| 1947 | 21,546.12 |
| 1948 | 22,503.00 |

It is, therefore, clear that the Veterans' Administration was not obligated to pay the school anything for furnishing models, because the school did not pay anything for models.

Furthermore, the certificate the school was required to furnish in order to secure payment, read:

"This is to certify that models will be furnished to *all male students* of the E. Burnham School of Beauty Culture on the same basis as to Veterans and that such students will be charged for the actual amount of model fees incurred at the rate of $.50 per hour * * *." [Italics ours.]

■ The regulations of the Veterans' Administration, issued pursuant to Public Law 346, from which we quoted above, show that no fees were to be paid the school for the training of veterans unless the same fees were charged non-veteran students. The Commissioner's findings show, and they are amply supported by the record, that no non-veteran students, with two possible exceptions, were ever charged model fees.

■ Plaintiff's records do indicate that two non-veteran students were charged model fees, but these entries are suspect. A ledger card was kept for each student. The card for a student by the name of Bednarek shows that this student was charged *on July 21, 1947* with model fees, and this student was given a receipt for the payment of model fees, but this receipt is dated *July 11, 1947*, which was ten days earlier than the charge made against the student. The entries on these ledger cards were

.made in typewriting, but in the case of a student by the name of Weselsky there was an inked notation on his ledger card of a charge for model fees, dated June 30, 1947, and a payment thereof on July 15, 1947.

No such fees were paid by other non-veterans, nor were they charged such fees.

We are convinced that plaintiff is not entitled to recover these model fees, not only because the school did not pay the models anything, but also because non-veterans were not charged such fees, which was required as a condition precedent to the charging of such fees to veterans.

### Defendant's counter-claim

 Plaintiff submitted four vouchers to the Veterans' Administration requesting payment of model fees in the following amounts: $5,387.50; $2,772; $1,377; and $1,530. Each voucher contained this certificate, signed by the president of the plaintiff corporation:

"I hereby certify that charges for tuition and fee *are not in excess of charges customarily made to any student pursuing the particular course*, that the cost of books, supplies, equipment and other expenses for each veteran *is the actual cost* of such items * * *." [Italics ours.]

These certificates were false.

Section 2514 of 28 U.S.C. (1952 ed.) provides:

"A claim against the United States shall be forfeited to the United States by any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance thereof.

"In such cases the Court of Claims shall specifically find such fraud or attempt and render judgment of forfeiture."

However, since we have held that plaintiff is not entitled to recover, it seems unnecessary to render a judgment of forfeiture.

Defendant has abandoned its claim for $2,000 for each false voucher, since it admits that this claim is barred by the statute of limitations.

Plaintiff's petition is dismissed.

JONES, Chief Judge, and LARAMORE, MADDEN and LITTLETON, Judges, concur.